**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SEAN PATRICK BURKE,** *et al.***,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Civil No. 5:23-cv-01959-JMG** |
| | : | |
| **CHIEF EDWARD BACHERT,** *et al.***,** | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                    **November  20, 2023**

## I.   OVERVIEW

Plaintiffs Sean Patrick Burke; Equinox Advantage Real Estate I, Inc.; Stella Cadente Investments, LLC; and Equinox Property Management, Inc. (collectively, "Plaintiffs") allege claims against Defendants Officer Richard Penn; Officer Steven Fritzinger; Officer Matthew Devers; Officer Jose Vazquez; Officer Eric Tosado; Officer Richard Krasley; (collectively, "Officer Defendants"); Cindy Witman; Timothy Campion; Garren Knoll; Barry Cohen (collectively, "Base Employee Defendants"); Base Engineering, Inc.; Borough Manager Eric Gratz; Chief of Police Edward Bachert; Charles F. Zurick, III; and  John Does 1–10. Plaintiffs allege state and federal violations arising from an enduring property dispute. Specifically, Plaintiffs allege Fourth Amendment, trespass, and Fourteenth Amendment (due process) violations in addition to a civil rights conspiracy and malicious prosecution. Each claim brought against an individual defendant is done so in his or her individual capacity.

Before the Court are three motions to dismiss the Amended Complaint for failure to state a claim brought by (1) Officer Defendants, Defendant Bachert, and Defendant Gratz (collectively, "Borough Defendants"); (2) Base Engineering, Inc. and Base Employee Defendants; and (3) Defendant Zurick. For the reasons set out in this memorandum, the Court grants in part and denies

in part each of Defendants' motions to dismiss. An appropriate order follows.

## II.    BACKGROUND

### A. Relevant Allegations[1]

#### 1.    Plaintiffs Purchased 728 Delaware Avenue in Fountain Hill, Pennsylvania.

This suit arose out of a property dispute that eventually spiraled into criminal proceedings for harassment, and now, a suit alleging various state and constitutional violations. Plaintiffs are people and corporations associated with the property at issue, which is a mixed-use property (residential and commercial) at 728 Delaware Avenue in Lehigh County, Pennsylvania (the "Property"). Defendant Charles F. Zurick, III ("Defendant Zurick") lives next door to Plaintiffs. Defendant Zurick claimed to have an agreement with the previous owners of the Property to use their parking lot. During several of Plaintiffs' on-site visits prior to closing on the sale, Defendant Zurick approached Plaintiff Sean Patrick Burke ("Plaintiff Burke"), Plaintiffs' broker, and expressed his desire to continue to use the Property's parking lot following the sale.

Plaintiff Stella Cadente Investments, LLC ("Stella") closed on the Property's sale on July 29, 2020, and Defendant Zurick's lobbying efforts continued. Not long after closing on the Property, Plaintiffs decided against granting Defendant Zurick continued use of the Property; a decision they reached in part due to the lack of any written easement or other such agreement. On October 30, 2020, Defendant Zurick initiated an action for Quiet Title and Declaratory Judgment establishing an easement by prescription over a portion of Plaintiffs' parking lot.

Throughout the Amended Complaint, Plaintiffs allege that Defendant Zurick manipulated "local borough connections to harass the Plaintiffs" as "part of a coordinated and calculated strategy." *Id.* at ¶ 35. Defendant Zurick is a member of the civil service commission, which

---

[1] At this stage of litigation, the Court must assume as true the allegations in the Amended Complaint.

oversees the Fountain Hill Police Department including the development of "qualification and testing for appointments and promotions in the Police Department and holding hearings for suspensions, removal, and reduction in rank of Police." Am. Compl. at ¶¶ 14, 79 (ECF No. 32). The first indication of Defendant Zurick's intentions, Plaintiffs allege, came on August 24, 2020 through an intermediary. Plaintiffs allege that Tom Wargo, a borough zoning officer ("Zoning Officer") and non-party to this case, warned Plaintiff Burke that "there were 'eyes' on him and that his neighbor, Defendant Zurick, had 'deep relationships' in the Borough, and that Plaintiff Sean Burke would be wise to give Defendant Zurick what he wanted." *Id.* at ¶ 28.

### 2.  Plaintiffs' Exterior Lights

In October of 2020, Plaintiffs secured the necessary permits to install exterior lighting for its parking lot that would run from dusk to dawn. The lights were inspected by the borough and installed by licensed contractors. The next month, Plaintiffs learned for the first time that Defendant Zurick took issue with the lighting. Disputes over Plaintiffs' lighting in the coming months and years are the predicate for many of Plaintiffs claims, and Plaintiffs argue that the "unexpected and seemingly baseless focus on the exterior lights was pretextual, employed by [Defendants] to target Plaintiffs into submission and force them to comply with Defendant Zurick's demands regarding the [P]roperty." *Id.* at ¶ 61.

In November of 2020, Plaintiff Burke was speaking with the Zoning Officer about the exterior lighting when the Zoning Officer shared that "Defendant Zurick had been complaining throughout the Borough about the exterior lights." *Id.* at ¶ 38. The Zoning Officer also suggested to Plaintiff Burke around this time that if Plaintiffs "did not give Defendant Zurick what he wanted, the police were going to get involved." *Id.* at ¶ 42. No official complaint was filed with the borough, however, and the lights operated without further incident until May of 2021.

3

On May 24, 2021, Plaintiff Burke received urgent messages to speak on the phone from the borough's Chief of Police, Defendant Bachert. Plaintiff Burke contacted Defendant Bachert shortly thereafter. Defendant Bachert claimed that Plaintiffs' lighting violated the law and demanded that all exterior lights be removed from the Property. Plaintiff Burke explained that they had been inspected and all paperwork was in order, yet "Defendant Bachert responded that he did not care about any of that and again accused [Plaintiffs] of violating the law." *Id.* at ¶ 52.

At 3:00 p.m.—a time at which the lights would not have been illuminated—on May 25, 2021, Defendant Bachert issued the first of several citations to Plaintiffs regarding the lights for violating Title 18 2709(A)(3) of the criminal code (harassment). The citations alleged that Plaintiffs "use[d] high powered lights to illuminate [Defendant Zurick's] property after being asked several times to focus [its] lights" off of Defendant Zurick's property. *Id.* at ¶ 59. Plaintiffs' conduct, the citations stated, "did harass, annoy, and disturb [Defendant Zurick] engaging in a pattern of behavior that serve[d] no legitimate purpose," and noted that Plaintiffs had been previously warned. *Id.*

### 3. Criminal Proceeding

On July 29, 2021, the magisterial district court held a hearing regarding these citations. Allegedly, the proceeding was filled with inconsistencies and falsehoods against Plaintiffs, which were revealed in the appeal. Plaintiffs also allege that during the trial, it was established that the alleged offenses did not occur on the dates or times listed in the citations. In fact, Defendant Zurick stated that he never saw the lights on during the day, though the citations note they were issued during the day.

At the conclusion of this proceeding, Plaintiffs were found guilty and they turned off the lights that allegedly illuminated Defendant Zurick's property. However, Plaintiffs appealed and were adjudicated not guilty six months later. In the intervening months, though, Plaintiffs allege

4

that borough officials and police engaged in a concerted pressure campaign against him in the hope that they would capitulate to Defendant Zurick's wishes.

### 4.   Plaintiffs' Digitized Sign and Defendants' Intrusions into the Property[2]

By August 3, 2021 Defendant Base Engineering, Inc. had concluded that, based on documents and drawings, Plaintiffs exterior lighting did not "extend beyond the property line," and "no further evaluation [was] needed." *Id.* at ¶ 97. Around this same time, Plaintiffs installed a digitized sign on the property in accordance with all zoning and code requirements.

In the evening of September 29, 2021, borough police officers Defendant Devers and Defendant Fritzinger entered Plaintiffs' property and turned-off the power to Plaintiffs' recently installed sign. Defendants Dever and Fritzinger had neither a search nor administrative warrant to enter the Property. The borough police did not attempt to contact Plaintiffs before entering the Property, nor did they reach out after the fact. The police never charged Plaintiffs with any crimes or citations pertaining to the digitized sign. The police report related to this event states that Defendant Zurick complained that the sign was too bright, and this prompted the intrusion.

After the September 29 incident, disputes over the sign between Plaintiffs and the borough continued. Plaintiffs received a zoning notice regarding the sign, which they allege was issued at the direction of Defendant Eric Gratz, the Borough Manager. The Zoning Officer withdrew this notice, however, after Plaintiffs challenged it and explained to the Zoning Officer how Defendants Devers and Fritzinger had entered the Property without a warrant and turned off the sign.

At a borough council meeting on October 20, 2021, Defendants Zurick, Bachert, and Gratz objected to Plaintiffs' sign and argued that it violated zoning ordinances. Defendant Zurick went

---

[2] In addition to the three trespassing incidents described in this section, Plaintiffs also allege that Defendant Zurick trespassed and committed a Fourth Amendment violation in so doing on May 25, 2021. *Id.* at ¶ 54–55. For reasons explained in the Court's analysis, this event merits little discussion. Essentially, Plaintiffs plead that they found Defendant standing in their parking lot at mid-day without connecting this minor intrusion to their other claims.

on to claim that "the good chief," referring to Defendant Bachert, "is taking care of issues for me, helping us out." *Id.* at ¶ 112. The Zoning Officer subsequently issued a zoning violation notice regarding the sign. And on October 29, 2021, responding to an email from Plaintiff Burke about the sign, Defendant Bachert stated that police would be at the Property nightly to cite Plaintiffs for any malfunctions, even while conceding that the sign was in compliance with zoning ordinances.

In the hours following another borough council meeting on November 1, 2021 (attended by Defendants Zurick, Gratz, and Bachert) Defendant Fritzinger once again entered the Property without a warrant. Upon entering the Property, Defendant Fritzinger inspected the sign's control box but found it secured by a lock. Defendant Fritzinger retrieved a set of bolt-cutters and cut the lock, damaging the control box. In his police report, Defendant Fritzinger stated that Defendant Bachert instructed him to remove the lock and turn off the sign because it was in violation of zoning ordinances.

Plaintiffs were once again issued a zoning violation for the sign on November 5, 2021. The borough withdrew this violation five days later. And on November 10, the Zoning Officer informed Plaintiffs that their sign and lighting were compliant. Plaintiffs informed Defendants Bachert, Gratz, and several non-parties that they intended to turn the lights back on which they had turned off following the initial harassment proceeding. Plaintiff Stella shared that they intended to turn the allegedly offending lights back on "in ten (10) days and offered an opportunity to identify any legal basis as to why the lighting should not be resumed." *Id.* at ¶ 125. Plaintiffs received no response, but on November 15, 2021, Defendant Bachert engaged Defendant Base Engineering, Inc. to conduct a forensic light study on the Property.

On December 3, 2021, the Base Employee Defendants arrived at property to conduct the light study. They were accompanied by unknown police officers (John Does 1–10). The John Doe Defendants had no search or administrative warrant to enter the Property. On December 9, the

Zoning Officer issued another zoning violation against Plaintiffs. Later that month, Plaintiffs retained another firm, Snyder Hoffman, to conduct their own forensic light study in the presence of the Zoning Officer and Plaintiffs' counsel. The Snyder Hoffman "report demonstrated that Defendants Base Engineering and its employees . . . did not utilize proper equipment, locations, data, or analysis and formulated a faulty conclusion regarding the exterior lighting." *Id.* at ¶ 144. Following the Snyder Hoffman light study, the December 9 zoning violation was withdrawn.

### 5. Plaintiffs Prevailed in Their Appeal of the Harassment Charges

Plaintiff Burke's appeal on the criminal harassment charges was resolved in his favor on January 26, 2022. All charges were dismissed, and he was adjudicated not guilty. This proceeding, like the trial, revealed inconsistencies, falsehoods, and concerning details such as:

- Defendant Zurick testified that he never filed a complaint with the borough regarding the lights, contradicting his trial testimony that he had complained every week from November 2020 through May 2021;

- Instead of filing a formal complaint, Defendant Zurick testified he went directly to Defendant Bachert;

- Defendant Bachert testified, in contradiction to his trial testimony, that Defendant Zurick did contact him regarding the lights;

- The Zoning Officer testified that he was pressured by Defendant Bachert to file a civil complaint against Plaintiffs regarding their lights, even though a complaint was unjustified since there was no zoning violation; and

- Defendant Bachert attempted to offer altered photographs to support the harassment charges against Plaintiff Burke.

**B. Procedural History**

Plaintiffs commenced this lawsuit against Defendants on May 23, 2023, alleging Fourth Amendment, trespass, and Fourteenth Amendment (due process) violations in addition to a civil rights conspiracy and state law malicious prosecution. Compl. (ECF No. 1). Plaintiffs filed an Amended Complaint on August 14, 2023, Am. Compl. (ECF No. 32), following Defendant Base Engineering, Inc. and Base Employee Defendants' motion to dismiss the Complaint, ECF No. 25. On August 28, 2023, Defendants filed each of the three present motions to dismiss. ECF No.s 33–34, 37.

## III.   MOTION TO DISMISS STANDARD

Third Circuit courts deploy a three-step analysis when faced with motions to dismiss. First, we identify "the elements [the] plaintiff must plead to state a claim." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, we "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Finally, we assume the veracity of well-pled factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage "facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556–57 (internal quotation marks omitted)).

## IV.  DISCUSSION

For the reasons stated below, Defendants' motions are granted in part and denied in part. Count I (Fourth Amendment) is dismissed against all Defendants except Fritzinger and Devers. Counts II and III (state law malicious prosecution and Fourteenth Amendment, respectively) are dismissed against all Defendants except Bachert. Count IV (federal civil rights conspiracy) is dismissed against all Defendants except Bachert, Gratz, and Zurick. Finally, Count V (state law trespass) is dismissed against all Defendants except Fritzinger, Devers, Zurick, Campion, Witman, Knoll, Cohen, and John Does 1–10.

Plaintiffs' case may proceed because they have met the "low bar" set for them by the motion to dismiss standard against the few remaining Defendants, *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023), and because these Defendants have no established immunity from suit at this stage of litigation. The Court addresses Defendants' various claims of immunity first, then analyzes the merits of Plaintiffs allegation against each Defendant in turn.

### A.  Immunity

Defendants' briefing raises several forms of immunity, each requiring separate discussion. For the reasons that follow, the Court holds that: (1) qualified immunity is denied without prejudice as to the Officer Defendants, Defendant Bachert, and Defendant Gratz; (2) immunity under the Political Subdivision Tort Claims Act ("Act") is denied without prejudice as to Defendant Base Engineering, Inc. and Base Employee Defendants; and (3) immunity under Noer-Pennington doctrine is denied without prejudice as to Defendant Zurick.

### 1.  § 1983 Qualified Immunity

"[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir.2001)). "The burden of establishing qualified immunity falls to the official claiming it as a defense." *Burns v. PA Dept. of Corr.*, 642 F.3d 163, 176 (3d Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). Plaintiffs have sufficiently alleged an unreasonable violation of their clearly established constitutional rights, as well as some involvement by each of Defendants who remain in the lawsuit. On the face of the Amended Complaint, no remaining Defendant's entitlement to qualified immunity is clear. Accordingly, remaining Officer Defendants, Defendant Bachert, and Defendant Gratz's qualified immunity defense will be denied without prejudice.

### 2.  Immunity Under the Political Subdivision Tort Claims Act

Under the Act, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. STAT. AND CONS. STAT. § 8541 (1980). Employees of local agencies likewise enjoy immunity to the extent they acted within the scope of their duties "to the same extent as his employing local agency." *Id.* at § 8545. Defendant Base Engineering, Inc. and Base Employee Defendants are covered by the Act as a local agency and employees of a local agency, respectively. Plaintiffs correctly point out, however, that the Act contains a pertinent exception for willful misconduct: when a court determines "that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally) . . . shall not apply." *Id.* at § 8550.

Whatever determination this Court may make in the future, we are presently bound to the well-pled facts in the Amended Complaint, which contains sufficient allegations of willful

misconduct to prevent any application of immunity under the Act at this time. The Court denies immunity under the Act as to Defendant Base Engineering, Inc. and Base Employee Defendants without prejudice.

### 3. Noerr-Pennington Doctrine

Defendant Zurick raises Noerr-Pennington immunity, the final form of immunity raised in the motion to dismiss briefing. Under the Noerr-Pennington doctrine, a party who petitions the government for redress is generally immune from liability. *See Mariana v. Fisher*, 338 F.3d 189, 197 (3d Cir. 2003) (quoting *A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 250 (3d Cir. 2001)); *see Campbell v. Pennsylvania Sch. Boards Ass'n*, 972 F.3d 213 (3d Cir. 2020) (applying Noerr-Pennington immunity doctrine in contexts beyond antitrust). Immunity under this doctrine also extends to state actors, *see id.*, as Plaintiff pled Defendant Zurick's status. Nevertheless, petitioners whose claims were objectively baseless or were intended to abuse a government process are entitled to no immunity. *See id.* at 219. This is referred to as the sham litigation exception, and Plaintiffs argue that it applies in this case. However, the sham litigation exception is difficult for plaintiffs to establish, *see FTC v. AbbVie*, 976 F.3d 327, 361 (3d Cir. 2020), and, generally, is better resolved at the summary judgment stage due to its fact-intensive nature, *see FTC v. Shire ViroPharma, Inc.*, 2018 WL 1401329, at *7 (D. Del. March 20, 2018). With the foregoing in mind, the Court denies Defendant Zurick's claim to immunity under Noerr-Pennington doctrine without prejudice. Defendant Zurick may re-raise his claim of immunity in a motion for summary judgment, when Plaintiffs are better situated address the sham litigation exception's applicability following discovery.

### B. Count I - Fourth Amendment

Plaintiffs allege in Count I several Fourth Amendment violations stemming from Defendants' "warrantless entry and disconnection of the lighting fixtures" on their property. Am.

Compl. at ¶ 179 (ECF No. 32). To be clear, "[a] physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated, . . . for an actual trespass is neither necessary nor sufficient to establish a constitutional violation." *United States v. Katzin*, 769 F.3d 163, 175 (3d Cir. 2014).[3] The Fourth Amendment guards against unreasonable searches and seizures. U.S. CONST. amend. IV. Searches and seizures are unreasonable absent a warrant unless a warrant exception applies. *See Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971). To state a claim for an unreasonable search under the Fourth Amendment, plaintiffs must plead that a defendant "invaded areas to which the public did not have access and in which there was a reasonable expectation of privacy (e.g., private offices, storage rooms, and residences)." *Free Speech Coal., Inc. v. Att'y Gen. United States*, 825 F.3d 149, 168 (3d Cir. 2016). A claim for unreasonable seizure is stated when plaintiffs plead "some meaningful interference with . . . [their] possessory interests in [their] property." *Stone v. Martin*, 720 F. App'x 132, 134 (3d Cir. 2017) (internal quotation omitted).

For various Defendants and events, the Court need not indulge a substantive Fourth Amendment analysis because a claim is plainly not stated. The Court will address these instances first.

### 1. Defendant Zurick's Alleged Trespass Does Not State a Fourth Amendment Claim

The Amended Complaint states four separate dates on which alleged violations occurred: May 25, 2021; September 29, 2021; November 1, 2021; and December 3, 2021. Am. Compl. at ¶¶ 54, 101, 115, 134 (ECF No. 32). The May 25, 2021 incident does not state a claim under the Fourth Amendment because Plaintiffs only allege that "Defendant Zurick was standing on [Plaintiffs']

---

[3] Plaintiffs label their Count I allegation "Fourth Amendment *Trespass*," Am. Comp. at 27 (ECF No. 32) (emphasis added), but go on to allege unreasonable searches and seizures. The Court disregards Plaintiffs' unclear labelling in Count I and construes the Amended Complaint as one alleging unreasonable searches and seizures under the Fourth Amendment.

parking lot, despite no trespassing signs and receiving prior written notice that he should not use the [P]roperty." *Id.* at ¶ 54. Plaintiffs fail to state a Fourth Amendment claim for this event because they did not satisfactorily plead that Defendant Zurick was a state actor at the time of his trespass. The Amended Complaint contains one paragraph about this event, which amounts only to an allegation that Plaintiffs found Defendant Zurick standing in their parking lot at mid-day and asked him to leave. *Id.* But even if the Court granted Plaintiffs this point, Plaintiffs still do not allege that Defendant Zurick violated Plaintiffs' reasonable expectation of privacy or interfered with a possessory interest of theirs.

### 2. Defendants That Did Not Enter Plaintiffs' Property

Count I fails to state a claim against several Defendants for various reasons. Because Plaintiffs do not allege that Defendants Penn, Vazquez, Tosado, Krasley, Gratz, or Bachert ever violated Plaintiffs' reasonable expectation of privacy or interfered with a possessory interest of theirs, Plaintiffs have failed to state a Fourth Amendment claim against these Defendants and Count I is dismissed as to each of them.

Count I is also dismissed as to Defendant Base Engineering, Inc. because Plaintiffs do not allege *Monell* liability, and the Court construes a claim against Defendant Base Engineering, Inc. as a claim against the municipality. A municipality, like [Defendant Base Engineering, Inc.], "cannot be liable under a theory of respondeat superior or vicarious liability." *M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004) (citing *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 691–92 (1978)). "Rather, in order for a . . . [municipality] to be liable for the violation of a constitutional right under § 1983, the plaintiff must identify a policy or custom of the entity that caused the constitutional violation." *Id.* Plaintiffs identified no such policy or custom in their Amended Complaint.

### 3.  Remaining Events and Defendants

However, Plaintiffs have stated claims for Fourth Amendment violations against Defendants Fritzinger and Devers for the September 29 and November 1, 2021 events. These Defendants do not dispute that they entered Plaintiffs' curtilage without a warrant, but argue that their presence was only incidental, momentary, and, in any case, privileged under the exigent circumstances exception. Mem. of Law in Supp. of Officer Def.s' and Def. Gratz's Mot. to Dismiss Pl.s Am. Compl. at 7–9 (ECF No. 37). The Court notes that an "incidental and momentary" intrusion is at odds with allegedly bolt-cutting locks, vandalizing property, and powering down exterior lights and signage. Am. Compl. at ¶¶ 2, 101 (ECF No. 32). As for the Officer Defendants' exigent circumstances argument, an appropriate analysis of this contention is better suited for the summary judgment stage following discovery. *Hamilton v. Radnor Twp.*, 502 F. Supp. 3d 978, 986 (E.D. Pa. 2020) (The presence of exigent circumstances is fact-specific and "typically . . .  not amenable to resolution on the pleadings alone, unless those pleadings affirmatively demonstrate the existence of an exception to the Fourth Amendment's warrant requirement.") (quoting *Tucker v. Petruzzi*, No. 17-1848, 2018 WL 3623766, at *5 (M.D. Pa. June 27, 2018)).

However, the Court dismisses Plaintiffs' Fourth Amendment violation claim as to the December 3, 2021 event against Base Employee Defendants and the John Doe Defendant police officers. Defendants do not dispute that they entered Plaintiffs' curtilage without a warrant. Therefore, Plaintiffs had to plead either that Defendants "invaded areas to which the public did not have access and in which there was a reasonable expectation of privacy," *Free Speech Coal., Inc.*, 825 F.3d at 168, or "some meaningful interference with . . . [their] possessory interests in [their] property," *Stone*, 720 F. App'x at 134. Simply put, Plaintiffs had to plead that a search or a seizure occurred—they failed to do so for the December 3, 2021 event.

The Amended Complaint alleges that Defendants entered Plaintiffs' property on December 3 and conducted a light study, but says nothing about how those actions constituted a search or a seizure. Well-pled facts saved the prior two events from dismissal. On September 29, 2021, Defendants Devers and Fritzinger entered the property and "disconnected the power (seized) to the lawfully installed digitized sign for Plaintiff Equinox without permission or warrant." Am. Compl. at ¶ 101 (ECF No. 32). On November 1, 2021, Defendant Fritzinger again entered the property and, using bold cutters, "cut the lock [on the control box], damaged the control box, and seized the sign rendering it inoperable." *Id.* at ¶ 119. The Amended Complaint is silent as to how a light study amounts to a search or a seizure. Granting all inferences in Plaintiffs' favor, the only allegation approximating support for a Fourth Amendment violation on December 3, is that the light study was done "in direct violation of Plaintiffs' July 2021 notice that Plaintiff Burke" be present. *Id.* at ¶ 139. But, first of all, Plaintiffs neglected to provide any more details about this "notice." And second, standing alone, this statement would require too many leaps to establish a reasonable expectation of privacy in the area Defendants entered.

Plaintiffs' Fourth Amendment claims may proceed against Defendants Fritzinger and Devers only as to the events of September 29 and November 1, 2021. Plaintiffs' Fourth Amendment claims are dismissed against all remaining Defendants and for all other events.

### C.  Count V - Trespass

"Under Pennsylvania law, 'trespass' is defined as unprivileged, intentional intrusion upon land in possession of another." *United States v. Union Corp.*, 277 F. Supp. 2d 478, 495 (E.D. Pa. 2003) (citing *Reynolds v. Rick's Mushroom Service, Inc.*, 246 F. Supp. 2d 449 (E.D. Pa. 2003)). Plaintiffs have stated a claim for trespass against the following Defendants, who do not dispute

entering Plaintiffs' property: Fritzinger, Devers, Zurick, Witman, Campion, Knoll, Cohen, and John Doe Defendants 1–10.[4] Count III is dismissed against all other Defendants.

### D. Count II - Malicious Prosecution

To survive of motion to dismiss, the complaint must support the following:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*See Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016), *as amended* (Sept. 16, 2016) (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)) (emphasis omitted). "Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012) (citing *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005)).

The Court notes the stark disagreement between Plaintiffs and Defendants in interpreting pled facts around Plaintiffs' trials.[5] Nevertheless, the Court must accept as true well-pled facts in the Amended Complaint, which contains sufficient material to survive a motion to dismiss as to Defendant Bachert, who issued the six harassment citations that gave rise to the criminal proceeding against Plaintiffs. The Amended Complaint alleges that Defendant Bachert

---

[4] The Base Employee Defendants argue that the closely-regulated-industries warrant exception applies in this case because courts have extended that exception to residential construction. But this begs at least two questions: (1) is a light study within the domain of construction, and (2) can this mixed-use property be classified as residential for the purposes of a light study? These questions raise issues of fact and law that are more appropriately addressed following discovery.

[5] On a motion to dismiss, the Court cannot consider Defendants' argument as to why Defendant Zurick's name appears on the citations Defendant Bachert issued or why those citations appear to have been issued during daylight hours.

"manufactured," Am. Compl. at ¶ 59 (ECF 32), these harassment incidents and goes on to describe them as "baseless criminal summary citations," Am. Compl. at ¶ 63 (ECF 32).

However, Count II (malicious prosecution) is dismissed as to all remaining named Defendants. For Defendants other than Bachert, the only issue that could be considered a close call is Base Engineering, Inc. and Base Employee Defendants.[6] The Court understands *Henderson* to extend to employees of a municipality other than police officers, such as, theoretically, Base Employee Defendants. If Base Engineering, Inc. or its employees "knowingly provided false information to the prosecutor," they may be deemed to have "initiated" the criminal proceeding and be liable for malicious prosecution. *Henderson*, 853 F. Supp. 2d at 518. The Amended Complaint alleges that "[t]he Snyder Hoffman report demonstrated that Defendants Base Engineering and its employees Witman, Campion, Knoll, and Cohen did not utilize proper equipment, locations, data, or analysis and formulated a faulty conclusion regarding the exterior lighting." Am. Compl. at ¶ 144 (ECF No. 32). At worse, however, Plaintiffs' allegations that Defendants failed to use proper equipment evinces negligent conduct.

### E.  Count III - Fourteenth Amendment

To prevail on a fabrication of evidence claim at the dismissal stage, a plaintiff—who was not convicted during the proceedings at issue—must plead facts showing (1) a reasonable likelihood that, absent that fabricated evidence, the plaintiff would not have been criminally charged;[7] (2) that the evidence was of such significance that it could have affected the outcome of

---

[6] The Amended Complaint absolves, rather than implicates, Defendant Zurick in Count II. *See* Am. Compl. at ¶¶ 58-59 (ECF 32) (stating that Defendant Zurick did not complain of the lights, and that Defendant Bachert "inexplicably introduced this new element into the situation.").

[7] When defendants prevail in the subject proceedings, they nonetheless have a cause of action to bring a stand-alone Fourteenth Amendment violation if they can establish that they would not have been charged but-for the fabricated evidence. *Black*, 835 F.3d at 371. Such stand-alone causes of action are narrower than those in which a defendant was convicted. A convicted defendant may bring an evidence fabrication claim for any evidence that they can establish a causal connection to their conviction, *id.* at 371–72, which includes evidence presented at trial. An unconvicted

the criminal case; and (3) that the evidence was fabricated, not merely incorrect or simply disputed. *See Black*, 835 F.3d at 372; *Boseman v. Upper Providence Township*, 680 Fed.Appx. 65, 69–70 (3d Cir. 2017).

The first prong, reasonable likelihood, raises an issue of causation that Plaintiffs fail to meet for nearly all Defendants. The reasonable likelihood prong requires a plaintiff to show that they would not have been charged but-for the fabricated evidence. *Black*, 835 F.3d at 371–72. At most, and explained in more detail below, this limits Plaintiffs' Fourteenth Amendment claim to Defendant Bachert. Therefore, Count III (Fourteenth Amendment - fabrication of evidence) is dismissed as to all other Defendants. To the extent that these Defendants offered evidence against Plaintiffs, according to the Amended Complaint, their actions were either irrelevant or too attenuated from the charging decision to be liable under *Black*. Count III is also dismissed against Defendant Zurick because, as discussed above, he did not report to police that he was being harassed by Plaintiffs' lights.

Defendant Bachert issued the criminal citations for harassment that directly caused the criminal proceedings against Plaintiffs. Am. Compl. at ¶¶ 62, 65. In a simple criminal matter such as this was, the citations and Defendant Bachert's testimony regarding the circumstances surrounding their issuance would certainly affect the outcome of the proceeding. Much of the parties' dispute, accordingly, lies around *Black*'s third prong: whether the evidence was fabricated, not merely incorrect or simply disputed. *See Black*, 835 F.3d at 372. Accepting the Amended Complaint's factual allegations as true, Count III will survive against Defendant Bachert. Plaintiffs have pled that these citations were "orchestrated to pressure the Plaintiffs into compliance with Defendant Zurick's demands," Am. Compl. at ¶ 67 (ECF No. 32), and that "Defendant[] Bachert

---

defendant, however, is limited to evidence used to charge them and excludes trial evidence. *See id.* at 371.

. . . testified that the alleged events did not occur on the dates and times written on the citations, nor was any evidence or testimony produced that the lights were not installed for a legitimate purpose," Am. Compl. at ¶ 69. These allegations meet the "low bar" required to survive a motion to dismiss. *See Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023). The Court notes the Borough Defendants' explanation for this apparent inconsistency, Mem. of Law in Supp. of Officer Def.s' and Def. Gratz's Mot. to Dismiss Pl.s' Am. Compl. at 17 (ECF No. 37), but on a motion to dismiss, "it is the allegations within the four corners of the complaint that govern." *See Regent Ins. Co. v. Strausser Enterprises, Inc*, 814 F. App'x 703, 708 (3d Cir. 2020) (citing *I.C.D. Indus., Inc. v. Fed. Ins. Co.*, 879 F. Supp. 480, 488 (E.D. Pa. 1995)).

### F.  Count IV - Civil Rights Conspiracy

To state a claim for civil rights conspiracy under § 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (citing *Gale v. Storti*, 608 F.Supp.2d 629, 635 (E.D. Pa. 2009)). Critically, a plaintiff must "allege that there was an agreement or meeting of the minds to violate his constitutional rights." *Id.* Because direct evidence of conspiracies is rare, plaintiffs typically rely on circumstantial inferences at the dismissal stage. *Capogrosso v. The Supreme Ct. of New Jersey*, 588 F.3d 180, 184–85 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1480–81 (10th Cir. 1990)). For the reasons stated below, Count IV (civil rights conspiracy) will survive as to Defendants Zurick, Bachert, and Gratz, but is dismissed as to all other Defendants.

### 1.  Defendants Zurick, Bachert, and Gratz

The Amended Complaint states a claim for conspiracy between Defendants Zurick, Gratz, and Bachert. And for the purposes of Count IV, the Court agrees with Plaintiffs that Defendant Zurick was a state actor. A private citizen acts under color of law when they are a "willful

participant in joint activity with the [government] or its agents" that deprives a federally guaranteed right. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)). A private citizen's conduct rises to "joint activity with the government" when they conspire with the government to violate federally protected rights. *See Webber v. First Student, Inc.*, 928 F. Supp. 2d 1244, 1258–59 (D. Or. 2013) (citing *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)).

Defendant Zurick is a member of the civil service commission, which, according to the Amended Complaint, oversees the Fountain Hill Police Department (of which Defendant Bachert is the Chief of Police) including the development of "qualification and testing for appointments and promotions in the Police Department and holding hearings for suspensions, removal, and reduction in rank of Police." Am. Compl. at ¶¶ 14, 79 (ECF No. 32). Taken as true, these allegations paint the civil service commission as holding a great deal of power and influence over individual officers in the Fountain Hill Police Department like Defendant Bachert. Indeed, Plaintiffs allege that Defendants Bachert and Gratz were acting "under the direction or influence of Defendant Zurick, for [their] own convenience and personal gain." *Id.* at ¶ 171. Each of the six citations that Defendant Bachert issued in this case were prompted by Defendant Zurick, *id.* at ¶ 62, and each was later thrown out following appeal, *id.* at ¶ 146. The Court grants in Plaintiffs' favor, at this early stage of litigation, an inference that Defendant Zurick's position on the civil service commission encouraged Defendants Bachert and Gratz to conspire with Defendant Zurick to violate Plaintiffs' rights and meet Defendant Zurick's personal aims in his property dispute with Plaintiffs.

The Amended Complaint likewise states a claim under Count IV against Defendant Gratz. Plaintiffs' factual allegations against Defendant Gratz boil down to (1) he directed a zoning notice be issued to Plaintiff Stella by the Zoning Officer, *id.* at ¶ 107, (2) he participated in borough

council meetings in which Plaintiffs allege that Defendants hatched plans against them, *id.* at ¶ 110–12, 115 and (3) he was copied on an email requesting a light study be done, *id.* at ¶¶ 130–34. Neither (1) nor (3) sustain Plaintiffs' claims,[8] but Defendant Gratz's alleged active participation in the October 20 and November 1, 2021 council meetings, combined with other well-pled facts in the Amended Complaint, give rise to a circumstantial inference of conspiracy between Defendants Gratz and Bachert. During the October 20 meeting, Plaintiffs allege that Defendant Gratz urged the council President to publicly support continued action against Plaintiffs. *Id.* at ¶ 111. Although Plaintiffs did not attend the November 1 borough meeting, they pled facts that give rise to a circumstantial inference of conspiracy. The Amended Complaint alleges that Defendants Zurick, Gratz, and Bachert were in attendance from 7:00 to 7:50 p.m. and that approximately ten minutes after the meeting's end, Defendant Fritzinger entered Plaintiffs' property and cut off the sign's control box upon Defendant Bachert's instructions to do so. Taken together, and accepted as true, these allegations meet the plausibility standard put to Plaintiffs at this early stage.

### 2.  All Remaining Defendants

Although the Court proceeds with caution "in any pre- trial [sic] disposition of conspiracy allegations in civil rights actions, the rule is clear that allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso*, 588 F.3d at 184–85. Plaintiffs failed to plead any facts from which the Court can infer a meeting of the minds to violate their constitutional rights, and Count IV (civil rights conspiracy) is accordingly dismissed against all Defendants except Bachert, Gratz, and Zurick.

---

[8] Plaintiff does not contend that the zoning notices violated his Fourth or Fourteenth Amendment rights. Also, being copied on an email is an action taken by another person over which one has no control. Obviously, such a fact is insufficient to evince an intention to conspire to violate another's constitutional rights.

Plaintiffs pled no facts from which the Court can infer a conspiracy among any remaining Officer Defendants or Base Employee Defendants. Regarding the Officer Defendants, there is no sentence in the Amended Complaint—aside from legal conclusions—that even suggests these Defendants conspired to violate Plaintiffs' constitutional rights. As discussed above, there are not even details regarding what, if any, involvement that Officer Defendants (other than Defendants Fritzinger and Devers) had in these incidents.[9] Although the Fourth Amendment claim against Defendants Fritzinger and Devers survives the motions to dismiss, the Amended Complaint contains no factual allegations from which the Court can infer that they conspired to violated Plaintiffs' constitutional rights. Instead, the Amended Complaint only includes legal conclusions such as the following:

> Defendant Zurick was, thus, acting under color of state law because he acted in concert with Defendants Bachert and the Police Officers and engaged in a state-run conspiracy with the local state-actors Defendants Bachert, all Defendant Officers, and Defendant Gratz and John Does. All of these Defendants directed illegal entry and illegally entered Plaintiffs' property at issue without consent or a warrant.

Am. Compl. at ¶ 92 (ECF No. 32). Such bald legal conclusions do not meet the pleading standard.

As to Base Employee Defendants, the factual allegations are only slightly better but still far from stating a claim for civil rights conspiracy. Essentially, Plaintiffs pled that these Defendants arranged to conduct a light study at the request of the municipality and carried out that light study. *Id.* at 131–34.[10] Although Plaintiffs go on to conclude that the light study "was initiated by Defendant Bachert in order to substantiate the harassment charges," *id.* at 135, there is no indication that the Base Employee Defendants shared Defendant Bachert's alleged intention.

---

[9] Though, incidentally, Plaintiffs do plead that Defendant Tosado filed a police report when Defendant Zurick contacted him following the brief interaction between himself and Plaintiff Burke on May 25, 2021. Am. Compl. at ¶ 55.

[10] Plaintiffs also plead that Base Employee Defendants conducted the light study improperly. *Id.* at ¶¶ 141, 144. They do not, however, allege any underhanded or conspiratorial intent. *Id.*

Accordingly, Count IV (civil rights conspiracy) is dismissed as to Defendants Penn, Fritzinger, Devers, Vazquez, Tosado, Krasley, Witman, Campion, Knoll, and Cohen.

## V.    CONCLUSION

For the reasons set out in this memorandum, the Court grants in part and denies in part each of Defendants' motions to dismiss. An appropriate order follows.

BY THE COURT:


/s/ John M. Gallagher
JOHN M. GALLAGHER
United States District Court Judge