IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN PATRICK BURKE, *et al.*,<br>    Plaintiffs,<br><br>v.<br><br>CHIEF EDWARD BACHERT, *et al.*,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 5:23-cv-01959-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                      **June 12, 2024**

**I. OVERVIEW**

  Parties in dispute often vow to "make a federal case out of it." Sometimes they shouldn't. When denying motions to dismiss, we often remind the parties that the plausibility standard is a "low bar," *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023), and Plaintiffs certainly benefitted from that standard. But we are not in the dismissal stage anymore. On a motion for summary judgment, a movant challenges "the opposing party to 'put up or shut up' on a critical issue." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). When respondents fail to "put up," summary judgment is proper. *Id.* As such, prudent federal litigants must consider more than whether their claims are plausible at the pleading stage—when they are given the benefit of the doubt. They must also consider their ability to "put up" at the close of discovery, or their case will eventually be shown the door of the federal courthouse. The Supreme Court endorses this approach: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (*citing* Fed. R. Civ. P. 1; Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issue of Material Fact*, 99 F.R.D. 465, 467 (1984)). Here, while

a dispute certainly remains, the federal claims are off-ramped from the case.

What's left, then, are the state law claims and counterclaims. However, the Court declines to exercise supplemental jurisdiction over them. We reach this decision based upon considerations of judicial economy, convenience, fairness to litigants, and comity as well as the absence of any federal claims.

## II. BACKGROUND

### A. Relevant Facts

#### 1. The Parties

In July of 2020, Plaintiff Stella Cadente Investments, LLC ("Stella") purchased the property at 728 Delaware Avenue, in the Borough of Fountain Hill ("728 Delaware"), and ultimately decided to locate Stella's offices, along with the office for Plaintiff Sean Burke's business, Plaintiff Equinox Property Management Services, Inc. ("Equinox"), there. Statement of Undisputed Material Facts of Defs., Chief Edward Bachert, Officer Steven Fritzinger, Officer Matthew Devers, and Borough Manager Eric Gratz's ("Fountain Hill Defendants' SUMF") at ¶ 1 (ECF No. 77). Plaintiff Burke's wife, Katherine Burke, is the sole and managing member of Stella. *Id.* at ¶ 2. The 728 Delaware property is a mixed-use property containing commercial offices on the first floor and residential apartments on the second and third floors that are rented to tenants. *Id.* at ¶ 4. Its parking lot is shared by the tenants, the employees of Stella and Equinox, and the commercial trucks and trailers used by Equinox. *Id.*

Following our order on the motions to dismiss and a partial settlement dismissing some of the parties,[1] Defendants are a Fountain Hill resident and three current or former employees of the Fountain Hill Borough. Defendant Charles Zurick has lived directly next door to the 728 Delaware

---

[1] Defendants Cindy Witman, Timothy Camption, Garren Knoll, and Barry Cohen were dismissed with prejudice pursuant to agreement of counsel without costs. *See* ECF No.s 94, 108.

property for 42 years with his wife, Sharon Zurick. *Id.* at ¶ 5. Defendants Chief Bachert and Officers Devers and Fritzinger are each employed by the Borough of Fountain Hill Police Department. Pls.' Statement of Material Facts at ¶ 11. Defendant Eric Gratz is the former Fountain Hill Borough Manager. Brief in Supp. of Mot. for Summ. J. on Behalf of Fountain Hill Borough Def.s at 1.

        2.    *Defendant Zurick requests permission to continue accessing his own property via 728 Delaware.*

Shortly after Stella took possession of 728 Delaware, Defendant Zurick asked Plaintiff Burke if he would permit him to continue crossing the parking lot at 728 Delaware to access his shed at the rear of his property as the prior owner had allegedly permitted. Fountain Hill Defendants' SUMF at ¶ 7 (ECF No. 77). But Defendant Zurick's request was denied. *Id.* at ¶ 8.

Things got worse from there. Defendant Zurick filed an action against Plaintiff Burke for declaratory judgment in state court, seeking a prescriptive easement. *Id.* at ¶ 11. Shortly thereafter, according to Defendant Zurick's counterclaim, Plaintiffs responded with a host of escalating actions. Chiefly, though not solely, these included installing exterior lights in Plaintiffs' parking lot and allegedly aiming them at Zurick's home. Zurick Counterclaim at ¶ 34 (ECF No. 53).[2]

        3.    *Fountain Hill Borough involvement*

From the fall of 2020 through the winter of 2021, Defendant Zurick complained to Fountain Hill Borough's Zoning Officer Tom Wargo that Burke had installed excessively bright exterior lighting aimed at the Zurick property that kept him and his wife awake at night. Fountain Hill

---

[2] Although Defendants cite to the parties' joint appendix or other record evidence throughout their statements of fact, Plaintiffs respond to many paragraphs in Fountain Hill Defendants' SUMF in boilerplate fashion: "The within statement of material fact violates Fed. R. Civ. P. 56(c)(1)(a) because it does not cite to any record evidence for the assertion and, accordingly, Plaintiffs object pursuant to Fed. R. Civ. P. 56(2)." *See e.g.* Pls.' Resp. to Fountain Hill Defs.' SUMF ¶ 14 (ECF No. 96). Plaintiffs' objections fail to lay a proper foundation and are disregarded.

Defendants' SUMF at ¶ 14 (ECF No. 77). Mr. Wargo dismissed his complaints stating that the lights were installed with appropriate permits. *Id.* at ¶ 19. However, Mr. Zurick claims that Mr. Wargo failed to examine the lights at night. *Id.* at ¶ 19.

In May of 2021, Defendant Zurick complained to Defendant Bachert about Plaintiff Burke's excessive lighting. *Id.* at ¶ 22. On May 24, 2021, Defendant Bachert called Plaintiff Burke and informed him that he wished to discuss Defendant Zurick's complaint of excessive lighting, which Zurick claimed disrupted his sleep and invaded his privacy. *Id.* at ¶ 24. Though the details of this phone call are in dispute, the parties agree that the call "ended abruptly" and was unproductive. Pls.' Resp. to Fountain Hill Defs.' SUMF ¶¶ 24–26 (ECF No. 96).

On May 25, 2021, Defendant Bachert issued Plaintiff Burke a citation for criminal harassment, which carried a fine of $40.25. The citation charged Plaintiff Burke with ongoing harassment under 10 Pa. 2709, § 9.3, and read: "Def. did harass, annoy and disturb victim engaging in a pattern of behavior that served no legitimate purpose. Def. was warned prior to citation. Def. did use high power lights to illuminate victim's property after being asked several times to focus lights off victim's property." Fountain Hill Defendants' SUMF at ¶ 29 (ECF No. 77). Defendant Bachert issued six (6) additional citations, at approximately weekly intervals, each identical to the first. Plaintiffs made no change to their lights following these citations, believing that Mr. Wargo's zoning conclusion controlled. Pls.' Resp. to Fountain Hill Defs.' SUMF ¶¶ 32–33 (ECF No. 96).

    4.    *First state criminal proceeding*

A summary trial was held before Senior District Judge Charles Baum on July 9, 2021 at which time Defendant Bachert prosecuted the citations against Plaintiff Burke. Defendant Zurick testified regarding the excessive lighting from the Burke property. Plaintiff Burke (represented by counsel) defended on the grounds that the citations were not supported by sufficient evidence. Judge Baum found Plaintiff Burke guilty on all seven (7) citations. *Id.* at ¶ 34. Following the

summary trial on July 9, 2021, Plaintiff Burke reduced the brightness of the lights for several months, although Defendant Zurick continued to complain that the lights intruded upon his privacy. *Id.* at ¶ 35.

### 5. *Plaintiff installs a bright commercial sign*

On September 29, 2021, Plaintiff Stella installed and activated a bright LED sign to advertise its business, Equinox. *Id.* at ¶ 36. On its first night of operation, Officers Fritzinger and Devers observed the sign at about 8:00 p.m. and concluded that it presented a risk of blinding motorists. *Id.* at ¶ 37. Upon the direction of their Chief, Defendant Bachert, Defendants Fritzinger and Devers entered Plaintiffs' outside commercial property and turned off the sign, which is located about 10 feet from a public sidewalk unobstructed by any fence or other such barrier. *Id.* at ¶ 37 (ECF No. 77).

Several days later, Plaintiff Burke acknowledged by email that the sign had malfunctioned—stating that it should have dimmed in the evening but did not—and needed reprogrammed. *Id.* at ¶ 39. Plaintiff Burke also agreed that the sign would not be operated between 10:00 p.m. and 5:00 a.m. as required by Fountain Hill Borough ordinance. *Id.* at ¶ 39.

But about a month later, on October 27, 2021, Zoning Officer Wargo issued a notice of violation to the Burkes because their sign was operating between 10:00 p.m. and 5:00 a.m. *Id.* at ¶ 44.

On November 1, 2021 shortly at 10:00 p.m., after the sign had been reprogrammed, Officer Fritzinger again observed the sign and concluded that it presented a risk of blinding motorists. *Id.* at ¶ 41. As they had done one month earlier, they attempted to turn off the sign, but this time discovered that Plaintiff Burke had installed a lock on the switchbox. *Id.* at ¶ 41. Defendant Chief Bachert directed Defendants Fritzinger and Devers to turn off the electronic sign if they concluded in their professional judgment that it presented an imminent risk of harm to the public. *Id.* at ¶ 43.

The officers used bolt cutters to remove the lock and turn off the light. *Id.* at ¶ 42.

      6.      *Second state criminal proceeding*

On January 26, 2022, the Court of Common Pleas heard *de novo* Plaintiff Burke's appeal of his convictions for criminal harassment. This time, Judge James T. Anthony determined that the evidence did not support the charge of criminal harassment, but rather constituted "a zoning issue," and therefore, found Plaintiff Burke not guilty. *Id.* at ¶ 52.

    B.    <u>Procedural History</u>

Plaintiffs commenced this lawsuit against Defendants on May 23, 2023, alleging various federal and state law claims. On August 14, 2023, Plaintiffs filed an amended complaint which alleged Fourth and Fourteenth Amendment violations as well as a conspiracy among Defendants to commit those violations. The amended complaint also brought state law claims for malicious prosecution and trespass. Three motions to dismiss the amended complaint were filed and the Court ruled on those motions on November 20, 2023, dismissing much of the case. Following the Court's motion to dismiss ruling, the following claims and defendants remained:

- Fourth Amendment (unlawful search and seizure) against Defendants Fritzinger and Devers;
- Fourteenth Amendment (fabrication of evidence) against Defendant Bachert;
- Civil rights conspiracy against Defendants Bachert, Zurick, and Gratz;
- Malicious prosecution against Defendant Bachert; and
- Trespass against Defendants Fritzinger, Devers, Witman, Campion, Knoll, Cohen, and Zurick.

Discovery in this matter proceeded expeditiously despite various disputes and concluded on May 15, 2024. Shortly thereafter, Plaintiffs reached a settlement with Defendants Witman,

6

Campion, Knoll, and Cohen that dismissed these defendants from the case with prejudice and without costs. *See* ECF No.s 94, 108.

Presently before the Court are cross-motions for summary judgment from the three remaining groups in the case: Plaintiffs, Fountain Hill Defendants (Bachert, Gratz, Frtizinger, and Devers), and Defendant Zurick.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

IV.   **DISCUSSION**

      A.   <u>Summary judgment is entered in favor of Defendants on all federal claims.</u>

           1.   *Fourth Amendment – unlawful seizure*

Following this Court's order granting in part Defendants' motion to dismiss, Plaintiffs' Fourth Amendment claims proceed only against Defendants Devers and Fritzinger for their actions on September 29 and November 1, 2021. On both of these occasions, Defendants Devers and Fritzinger entered Plaintiffs' commercial property and turned off their commercial LED sign. The sign is located ten feet from the public sidewalk, which is how these officers entered the property. On September 29, the officers turned off the sign by simply flipping the power switch. On November 1, however, they first used bolt cutters to access the power switch since Plaintiffs had added a lock after Defendants' September 29 visit. The officers did not obtain a warrant on either occasion. Plaintiffs allege that the officers' actions amounted to unlawful seizures.[3]

---

[3] The Court had hoped that Plaintiffs would better explain their Fourth Amendment claims during summary judgment briefing. In our memorandum opinion of November 20, 2023, we explained that "[a] physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated, . . . for an actual trespass is neither necessary nor sufficient to establish a constitutional violation." ECF No. 48 at 12 (*quoting United States v. Katzin*, 769 F.3d 163, 175 (3d Cir. 2014)). We also noted that "Plaintiffs label their Count I allegation 'Fourth Amendment *Trespass*,' (emphasis added), but go on to allege unreasonable searches and seizures. The Court disregards Plaintiffs' unclear labelling in Count I and construes the Amended Complaint as one alleging unreasonable searches and seizures under the Fourth Amendment." *Id.* at 12 n.3. Finally, we noted the proper frameworks for unlawful searches and seizures. An unlawful search occurs when the government invades an area for which a person possessed a reasonable expectation of privacy. *See Free Speech Coal., Inc. v. Att'y Gen. United States*, 825 F.3d 149, 168 (3d Cir. 2016). An unlawful seizure occurs when the government meaningfully interferes with a person's possessory interest in their property. *See Stone v. Martin*, 720 F. App'x 132, 134 (3d Cir. 2017).

Plaintiffs have unfortunately not elaborated on their unlawful search claim even in their own motion for summary judgment. They make no attempt to establish that they possessed any expectation of privacy in the invaded area. They have not cited to any record evidence—not even Plaintiffs' testimony—that such an expectation existed; providing instead only conclusory statements that an unlawful search occurred. *E.g.,* Mem. of Law in Supp. of Pls.' Mot. for Partial Summ. J. as to Counts I and V of the Am. Compl. and as to Counts I and II of Def. Charles F.

The Fourth Amendment of the United States Constitution guards "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Constitution's text makes clear that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). And "reasonableness generally requires the obtaining of a judicial warrant." *See Riley v. California*, 573 U.S. 373, 382 (2014) (*citing Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995)). Without a warrant, a seizure is reasonable only if an exception to the warrant requirement applies. *See King*, 563 U.S. at 459.

However, because Defendants Devers and Fritzinger affirmatively raise a qualified immunity defense, we first determine whether the right at issue was clearly established.[4] "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Dean*, 2023 WL 2597586, at *2 (*quoting Plumhoff v. Rickard*, 572 U.S. 765,

---

Zurick, III's Countercl. at 4–6 (ECF No. 88-2). It would seem unlikely, in any case, that there exists persuasive evidence of Plaintiff's reasonable expectation of privacy given that the area invaded—a parking lot—is akin to an open field. For this reason, and to the extent Plaintiffs intended to maintain their unlawful search claim, the Court dismisses Count I as to unlawful search because there is no dispute of material fact: Plaintiffs possessed no expectation of privacy in the invaded area of their property.

Although Plaintiffs have not elaborated on their unlawful seizure claim either, the undisputed facts of this case speak much louder on that claim. It is at least plausible that the government unlawfully interferes with one's possessory interest in a commercial LED sign when it turns that sign off.

[4] Since *Pearson v. Callahan*, district courts are not required to resolve whether a constitutional violation occurred in-fact before deciding whether that right was clearly established. *See* 555 U.S. 223, 236 (2009). "Pearson explained that courts can assume a constitutional violation and immediately consider whether the challenged actions were prohibited by clearly established law if that would end the case." *Dean v. Borough of Glassboro*, No. 21-2468, 2023 WL 2597586, at *2 (3d Cir. Mar. 22, 2023) (*citing id.* at 236–37).

778 (2014)). "And a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* "In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Id.* (internal quotation marks omitted). "[A] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated. Evidence concerning the defendant's subjective intent is simply irrelevant to that defense." *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).

The question here is whether it is clearly established law that police violate the Fourth Amendment when they turn off a private business's bright LED sign out of concern for public safety absent any criminal investigatory purpose. In other words, whether the "community caretaking" exception to the warrant requirement applies to distracting commercial signage. We hold that Plaintiffs' right to be free from police seizure of commercial signage under the "community caretaking" exception is not clearly established. Defendants Devers and Fritzinger are therefore entitled to qualified immunity from Plaintiffs' Fourth Amendment claim.

The Supreme Court first recognized the "community caretaking" exception in *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973). There, Dombrowski, an off-duty Chicago police officer, reported to the police that he had been in an automobile accident. Dombrowski appeared intoxicated to the responding officers, who also believed that Chicago police were required to carry their service weapon at all times. But no weapon was found on Dombrowski's person, so the police searched his vehicle "to protect the public from a weapon's possibly falling into improper hands." *Id.* at 434. Their search eventually turned up several items linking Dombrowski to a murder. The Supreme Court held that the search did not violate the Fourth Amendment, explaining that "[l]ocal

police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what . . . may be described as community caretaking functions, totally divorced from [criminal investigation]." *Id.* at 441.

The contours of the "community caretaking" exception—and by extension, the right of a business owner to be free from a brief seizure of their distracting commercial signage—are not sufficiently defined to have put Defendants Devers and Fritzinger on notice that they may have been violating the law. Since *Cady*, circuit courts across the country have tested the exception's limits, including the Third Circuit. *See Vargas v. City of Philadelphia*, 783 F.3d 962, 971 (3d Cir. 2015) (collecting cases); *United States v. Smith*, 522 F.3d 305, 315 (3d Cir. 2008) (holding that the "community caretaking" exception applies to vehicle impoundments); *United States v. Hawkins*, 646 F. App'x 254, 257 n.4 (3d Cir. 2016) (holding that the exception justifies confiscating one's car keys in anticipation of towing the car); *Ray v. Twp. of Warren*, 626 F.3d 170, 177 (3d Cir. 2010) (holding that the exception does not apply to searches of one's home); *Vargas*, 783 F.3d at 972 (holding that the exception applies to seizing a person outside of the home).

The Third Circuit explicitly stated in *Ray* that the "community caretaking" exception's application outside of the automobile context was an open question. 626 F.3d at 177. Then, just five years later, it extended the exception to brief seizures of persons outside of the home. *Vargas*, 783 F.3d at 972. So, while it is clearly established that under the "community caretaking" exception officers may impound vehicles (*Smith*) and briefly seize people (*Vargas*), they may not search dwellings (*Ray*). The gulf between these guardrails is vast. And it would seem the facts of this case—a brief seizure of a bright commercial sign that was distracting motorists during a time of day in which it could not lawfully be turned on—are much closer to impounding vehicles than

11

warrantless searches in the home. In short, plaintiffs have not provided, and we have not located, any precedent that put this constitutional question beyond debate. Officers Devers and Fritzinger are accordingly entitled to qualified immunity as to Count I of the amended complaint.

   2. *Fourteenth Amendment – fabrication of evidence*

Citing the various "hurdles" that a successful fabrication claim must overcome, the Third Circuit notes that it is "an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case." *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 70 (3d Cir. 2017) (quoting *Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016), *as amended* (Sept. 16, 2016)).

Plaintiff[5] nominally addresses his Fourteenth Amendment claim of fabricated evidence in a section titled "Plaintiff Burke's malicious prosecution and fabrication of evidence claims must reach the jury." Nearly all of that four-page section, however, is irrelevant to the Fourteenth Amendment claim. In fact, the relevant portions fit entirely in the following three bullets:

- "Defendant Bachert is not entitled to summary judgment on Plaintiff's [sic] Burke's . . . fabrication of evidence claims because he cannot demonstrate that he had reason to believe that the factual predicate for harassment under Pennsylvania existed – [light spillage]." Pls.' Mem. of Law in Opp'n to Chief Edward, Officer Steven Fritzinger, Officer Matthew Devers and Borough Manager Eric Gratz's Mot. for Summ. J. at 2 (ECF No. 95).[6]

---

[5] Plaintiffs' brief suggests that only Plaintiff Burke alleges a Fourteenth Amendment claim for fabrication of evidence, but the amended complaint states that both Burke and Stella bring this claim. The Court's analysis would apply equally to Plaintiff Stella, however, and we therefore dismiss this claim against Plaintiff Stella as well.

[6] Plaintiffs argue extensively that Defendant Bachert had no evidence that they were in violation of the borough's light spillage ordinance when he cited them for harassment. This argument is a red herring. One may violate the zoning ordinance against light spillage without committing

- "Defendant Bachert fabricated photographic evidence as a shoddy substitute for actual, relevant evidence – light measurements." *Id.*
- "Defendant Bachert misled the court by providing testimony and evidence regarding his subjective view that light intruded from 728 Delaware Avenue onto 734 Delaware Avenue." *Id.* at 6.

These are not simply the sentences that include a variation of the word "fabricate," they are the only portions of Plaintiffs' brief that address the Fourteenth Amendment claim. The first and second bullets are conclusory and cite no record evidence. The third bullet is not only conclusory,[7] but more importantly, cuts directly against the fabrication claim.

Plaintiffs' claim that Defendant Bachert fabricated evidence by providing his subjective view runs afoul of the test for fabrication. "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Boseman*, 680 F. App'x at 70 (*quoting Black*, 835 F.3d at 372). Here, Plaintiffs do not even argue that Defendant Bachert offered incorrect evidence. Instead, they seem to argue that subjective testimony they disagree with amounts to fabricated evidence. It is difficult to take that argument seriously. "If we were to hold that the 'he said, she said' dispute here rises to the level of fabricated evidence, we would undermine the 'unusual case' standard dictated by our precedent, which directs concern to cases in which there is actual evidence of fabrication." *Id.*

---

harassment, commit harassment without violating a zoning ordinance, or commit both violations simultaneously. To follow out Plaintiffs' argument, law enforcement would need to conduct a light study upon observing someone shining a giant spotlight onto his neighbor's house before issuing a citation for harassment. And in any case, Plaintiff ignores that Defendant Bachert's personal observations and testimony are themselves evidence.

[7] Plaintiffs' citation to thirteen pages of testimony is entirely unhelpful. They do not provide pincites to specific testimony they feel "misled the court" or how it did so.

   3. *Civil rights conspiracy*

Because the Court dismisses the amended complaint's Fourth and Fourteenth Amendment claims, Plaintiffs' claim for conspiracy to violate these underlying rights is moot and dismissed accordingly against all Defendants.

  B. <u>The Court declines to exercise supplemental jurisdiction over the remaining state law claims and counterclaims.</u>

The remaining counts in the amended complaint assert violations of state law. Pursuant to 28 U.S.C. § 1367(c)(3), the "district courts may decline to exercise supplemental jurisdiction over a claim. . . if . . . [it] has dismissed all claims over which it has original jurisdiction." "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In deciding whether to exercise supplemental jurisdiction, the district courts should consider factors such as judicial economy, convenience, and fairness to litigants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if these [factors] are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them"). The United States Supreme Court has further advised that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

Because each of Plaintiffs' federal claims are being dismissed before trial and the remaining state law claims and counterclaims depend in part on pending state litigation, the Court finds that it is in the interests of comity to decline to exercise jurisdiction. The pending state litigation, in particular, counsels against exercising jurisdiction. Defendant Zurick has sued Plaintiffs in the Court of Common Pleas of Lehigh County seeking declaratory relief regarding the existence of a prescriptive easement to cross Plaintiffs' property. We cannot adjudicate Plaintiffs'

trespass claim (Count V) until that matter concludes, and even then, exercising jurisdiction would result in piecemeal litigation. Further, Defendant Zurick has asked this Court not to exercise supplemental jurisdiction and Plaintiffs did not oppose that request in their responsive brief. There also appears to be little prejudice or inconvenience to the parties if they are required to pursue their claims in state court. Accordingly, this Court will decline to exercise supplemental jurisdiction. *See Burnsworth v. PC Lab'y*, 364 F. App'x 772, 776 (3d Cir. 2010) (affirming the district court's decision not to exercise supplemental jurisdiction under § 1367(c) after granting summary judgment on the § 1983 claim because the district court "dismissed all of the federal claims over which it had jurisdiction prior to trial."); *see also Petrossian v. Cole*, 613 F. App'x 109, 112–13 (3d Cir. 2015) (affirming the district court's decision not to exercise supplemental jurisdiction under § 1367(c) after dismissing the § 1983 claims and explaining that "the statute of limitations is tolled while the federal suit is pending and for a period of 30 days after the suit is dismissed.").

## V.     CONCLUSION

For the reasons set out in this memorandum, summary judgment is granted in favor of Defendants with respect to Counts I, III, and IV of the Amended Complaint. Also, the Court declines to exercise supplemental jurisdiction as to the remaining state law claims (Counts II and V) and counterclaims (Counts I and II), which are dismissed without prejudice so that they may be filed in state court.

A separate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Judge